**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VICTORINA SALVADOR and AGVS HOLDINGS, INC., | Civil Action No. 22-cv-6288 (JXN)(AME) |
| Plaintiffs, | |
| v. | **OPINION** |
| CITY OF UNION CITY, BRIAN P. STACK, *individually and in his capacity as Mayor of the City of Union City*, and ALEJANDRO VELAZQUEZ, *individually and in his capacity as Director of the Union City Health Department*, and JOHN DOES 1-10, | |
| Defendants. | |

**NEALS**, District Judge:

Before the Court is Defendants City of Union City, Brian P. Stack ("Stack"), and Alejandro Velazquez's ("Velazquez") (collectively, "Defendants") motion to dismiss Plaintiffs Victorina Salvador ("Salvador") and AGVS Holdings, Inc.'s ("AGVS") (collectively, "Plaintiffs") Amended Complaint (ECF No. 14) ("Amended Complaint" or "Am. Compl.") for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 23). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391, respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated below, Defendants' motion to dismiss (ECF No. 23) is **GRANTED**, and the Amended Complaint (ECF No. 14) is **DISMISSED without prejudice**, except for Counts VII and VIII, **which are DISMISSED with prejudice**.

## I.    BACKGROUND AND PROCEDURAL HISTORY[1]

According to the Amended Complaint, AGVS is a company owned and operated by Salvador. (*See* Am. Compl. ¶ 14).  Stack is a resident of the State of New Jersey who serves as Mayor of Union City. (*Id.* at ¶ 8). Velazquez is also a resident of the State of New Jersey who serves as Director of the Union City Health Department. (*Id.* at ¶ 9). In January 2022, AGVS purchased an apartment building located at 324 24th Street in Union City, New Jersey (the "Property"). (*Id.* at ¶ 14). Within weeks of purchasing the Property, Salvador alleges that she and Velazquez "had a phone call" during which Velazquez allegedly "made disrespectful comments to Salvador." (*Id.* at ¶ 15).  After the call, Salvador contacted Stack's office to file a complaint against Velazquez. (*Id.* at ¶ 16).  Two weeks after filing the complaint against Velazquez, Salvador alleges that she received a telephone call from Stack during "which he raised his voice and used offensive language towards her." (*Id.* at ¶ 17).  After the call, Salvador filed a complaint against Stack with the state ethics committee that "did not result in any action." (*Id.* at ¶ 18).

Sometime "[t]hereafter, during 2022 and 2023, Salvador received anywhere from eight to nine unfounded ordinance violations from the Union City Department of Health . . . for lack of repairs to the Property." (*Id.* at ¶ 19).  Thereafter, Salvador began to observe "handbills and other signs and notices" from Stack's office "on and around the Property." (*Id.* at ¶ 20).  In response, Salvador posted notices on the front door of the Property expressly prohibiting solicitation. (*Id.* at ¶ 23). Notwithstanding these notices, Plaintiffs allege Stack continued to place handbills at the Property.[2] (*Id.* at ¶ 24).  On May 10, 2022, Plaintiffs, through counsel, "sent a cease-and-desist letter requesting that [Stack] refrain from distributing and posting his handbills on the Property,"

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[2] "Plaintiff" and "Plaintiffs" are used interchangeably throughout the Amended Complaint. The singular "Plaintiff" predominantly appears to reference Salvador.

which Stack disregarded. (*Id.* at ¶¶ 25-26). Plaintiffs allege Stack disregarded multiple cease-and-desist letters, along with complaints filed with Union City, and continued "to send his representatives to the Property to personally distribute handbills to the tenants in the building." (*Id.* at ¶¶ 27-28).

Around 9:00 AM on October 31, 2023, Plaintiffs "were informed by a Union City Health Inspector that one of the apartments in the Property was experiencing a lack of heat." (*Id.* at ¶ 29). The outside temperature that day was recorded as "over 52 degrees." (*Id.* at ¶ 30). Plaintiffs' agent who responded to the Property on their behalf found the boiler to be in "good working order" and found the building's temperature "to be within acceptable temperature standards." (*Id.* at ¶ 31).

According to Union City Municipal Code Section 329-9, "if the boiler were found to be malfunctioning, [the property owner] would have been required to have it repaired within twenty-four (24) hours of receiving notice of the malfunction." (*Id.* at ¶ 32). Further, according to Section 32-10, the Health Inspector is only authorized to arrange repairs after this 24-hour period has passed and requires that the tenant must have made a bona fide attempt to inform the landlord before lodging a complaint and "the landlord failed to take appropriate action." (*Id.* at ¶ 33). Nevertheless, at around 6:00 PM, Plaintiffs allege that officers from the Union City Police Department ("UCPD") "entered the Property and broke into four boiler rooms without authorization." (*Id.* at ¶ 34).

"As recently as February 19, 2024, the UCPD was seen taking pictures of the Property at the direction of . . . Stack and physically checking doors to see if they were locked – all without authorization." (*Id.* at ¶ 50). Plaintiffs alleges this ongoing pattern of conduct demonstrates a coordinated effort by city officials to punish Salvador for exercising her constitutional rights to be free from unwanted solicitation and to be free from unreasonable searches. (*Id.* at ¶¶ 36, 37).

3

On May 20, 2024, Plaintiffs initially filed their Complaint. (ECF No. 1). Following the exchange of pre-motion conference letters, Plaintiffs filed an Amended Complaint on July 26, 2024.[3] (*See* Am. Compl.). The Amended Complaint asserts eight causes of action against Defendants: (1) deprivation of the right to be let alone in violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983 (Count I); (2) First Amendment retaliation under 42 U.S.C. § 1983 (Count II); (3) unreasonable search in violation of the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983 (Count III); (4) deprivation of due process in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983 (Count IV); (5) deprivation of the right to be let alone in violation of the New Jersey Constitution and N.J. Stat. Ann. § 10:6-2 (Count V); (6) unreasonable search in violation of the New Jersey Constitution and N.J. Stat. Ann. § 10:6-2 (Count VI); (7) violation of Union City Municipal Code §§ 208-5 to 208-7 (Count VII); and (8) violation of Union City Municipal Code §§ 329-9 and 329-10 (Count VIII).

On September 27, 2024, Defendants filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23) ("Br."). Plaintiffs opposed the motion (ECF No. 26) ("Opp'n"), to which Defendants replied. (ECF No. 27) ("Reply"). Accordingly, the motion is ripe for the Court to decide.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*,

---

[3] Following the exchange of pre-motion conference letters, the Court granted Plaintiffs' request to amend their initial pleading. (*See* ECF No. 13). Following a second exchange of pre-motion conference letters, on August 20, 2024, the Court granted Defendants' request to file this motion to dismiss. (*See* ECF No. 19).

556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation modified). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his or] her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true[.]" *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

To determine a complaint's sufficiency, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[ ] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation modified).

### III.    DISCUSSION

Defendants raise numerous arguments in support of their motion to dismiss the Amended Complaint. First, Defendants argue Plaintiffs' free speech claims against Stack fail because the distribution of political handbills on behalf of a re-election campaign does not constitute an action taken by a "state actor" under the "color of law" because the "right to be let alone" does not exist under First Amendment jurisprudence or corresponding New Jersey law. (*See* Br. at 14-22).[4] Next, Defendants assert Plaintiffs' other constitutional claims against Stack and Velazquez in their official capacities are duplicative of claims against Union City and therefore fail as a matter of law. (*See id.* at 21-22). Notwithstanding the substance of Plaintiffs' constitutional claims, Defendants contend the claims brought against Stack and Velazquez in their individual capacities should be dismissed because they are entitled to qualified immunity. (*See id.* at 27-30). Moreover, Defendants argue the claims against Union City must be dismissed because Plaintiffs fail to identify any "custom" or "policy" that led to these alleged constitutional deprivations, which is a required element to establish Section 1983 liability against a municipality. (*See id.* at 22-24). Further, Defendants assert any claim based on Defendants' unreasonable or unauthorized entry into Plaintiffs' boiler room fails because such action was protected under the emergency aid doctrine. (*See id.* at 24-27). Finally, Defendants assert that there is no private right of action for Plaintiffs to assert violations of Union City's Municipal Code. (*See id.* at 30-33). In their opposition, Plaintiffs challenge each of these arguments. (*See* Opp'n at 7-19). The Court addresses each argument in turn.

---

[4] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

### A. **Plaintiffs Fail to Plead Viable Free Speech Claims (Counts I and V).**

Counts I and V allege that Stack's distribution of political handbills on behalf of his re-election campaign violated Plaintiffs' right to be let alone under the free speech protections of the First Amendment and the New Jersey State Constitution. (*See* Am. Compl. ¶¶ 39-52, 80-87). Count I is brought pursuant to Section 1983, while Count V is brought pursuant to the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, *et seq.*[5]

Defendants contend Counts I and V fail because Stack was not acting as a state actor when engaging in campaign activities and therefore do not constitute actions taken under color of state law. (*See* Br. at 14-17). In opposition, Plaintiffs contend Stack engaged in a pattern of official misconduct distinguished from involving purely private political activity, which constitutes misuse of power "'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,'" ergo state action. (*See* Opp'n at 7-9 (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). The Court agrees with Defendants and dismisses Counts I and V.

> Section 1983 provides that:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

---

[5] In the Amended Complaint, Plaintiffs allege "Two weeks after filing the complaint against Velazquez, Salvador alleges that she received a telephone call from Mayor Stack during which he 'raised his voice and used offensive language towards her.'" (Am. Compl. ¶ 17). Though Plaintiffs do not specifically assert a claim based on the alleged behavior, the Court clarifies that "[i]t has been long recognized that mere verbal threats, in and of themselves, do not give rise to constitutional violations, and are thus not actionable under § 1983." *Jones v. Murphy*, No. 19-21629, 2022 WL 1229515, at *5 (D.N.J. Apr. 26, 2022) ("[M]ere verbal harassment or even threats, without more, do not give rise to constitutional violations, and are thus not actionable under § 1983." (citing *Callaway v. Small*, 576 F. Supp. 3d 232, 244 (D.N.J. 2021))).

To state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[ ] and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation modified); *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Modeled on Section 1983, the NJCRA "creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (citation modified). The NJCRA was "designed as a State analog to the federal civil rights statute codified at 42 U.S.C.A § 1983 and was intended to address potential gaps in remedies available under New Jersey law but not cognizable under the federal civil rights law, Section 1983." *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (citation modified).  Thus, claims brought pursuant to the NJCRA are analyzed under the same legal framework applicable to those brought pursuant to Section 1983.[6] *See Trafton*, 799 F. Supp. 2d at 443-44.

Accordingly, to state a claim for relief under Section 1983 or the NJCRA, a plaintiff must sufficiently allege "that the defendant acted under color of state law to deprive the plaintiff of a right secured by the Constitution." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *West*, 487 U.S. at 48). As the Third Circuit has explained, "'[t]he color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.'" *Bates v. Paul Kimball Hosp.*, 346 F. App'x 883, 887 (3d Cir. 2009) (quoting *Groman v. Twp. of Manalapan*, 47

---

[6] The plain language of the NJCRA imposes liability on any "person" who violates a plaintiff's civil rights under color of law. In particular, the NJCRA provides in relevant part that:

> Any person who has been deprived of any . . . rights . . . secured by the Constitution or laws of the United States, or . . . by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion *by a person acting under color of law,* may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c) (emphasis supplied); *Didiano v. Balicki,* 488 F. App'x 634, 637 (3d Cir. 2012).

F.3d 628, 638 (3d Cir. 1995)). In other words, if a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under Section 1983 fails as a matter of jurisdiction, *see Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

The "under color" requirement in cases arising under Section 1983 "has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). Accordingly, before liability under Section 1983 attaches, the complained of conduct must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Conduct will be fairly attributable to the state in each of the following two circumstances: (a) the individual or entity charged is a state actor, or (b) "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the latter may be fairly treated as that of the State itself." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 41 (1999) (citation modified); *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991) ("[G]overnmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government . . . ."). A sufficiently close nexus between a non-state actor and a state actor requires more than the state's "[m]ere[ ] approv[al] of or acquiesce[nce] in the initiatives of a private party"; rather, to be held responsible for private activity, a state must exercise "coercive power or ... provide[ ] such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982) (citation modified).

On the other hand, if the accused party or entity is not a state actor, Section 1983 cannot

be implicated. Indeed, "merely private conduct, no matter how discriminatory or wrongful," does not fall within the ambit of Section 1983. *Sullivan*, 526 U.S. at 49-50 (citation modified); *see also National Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) ("As a general matter[,] the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights.") (citation modified); *Edmonson*, 500 U.S. at 620 ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances").

The core issue before the Court, therefore, is whether Stack's campaign activities constituted private conduct. Courts have dismissed Section 1983 claims brought against private parties acting on behalf of a political campaign. *See, e.g.*, *Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 199-200, 202 (3d Cir. 2009) (finding Republican Committee of Lancaster County was not a state actor where it attempted to prevent a Republican committeewoman from campaigning for an unendorsed Republican candidate); *Neuman v. Ocean Cnty. Democratic Cnty. Comm.*, No. 16-2701, 2017 WL 396443, at *5 (D.N.J. Jan. 30, 2017) (concluding the Democratic County Committee's candidate selection process did not constitute state action); *Valenti v. Pa. Democratic State Comm.*, 844 F. Supp. 1015, 1019-20 (M.D. Pa. 1994) (determining the Pennsylvania Democratic State Committee was not acting under color of state law where Committee prohibited candidates for Democratic nomination from distributing literature because the conduct concerned internal party matters). As expressed *supra*, Section 1983 requires Stack to have been acting under the color of state law. *See Fiscella v. Twp. of Belleville*, No. 16-760, 2016 WL 7015627, at *3 (D.N.J. Dec. 1, 2016) ("Although a public employee generally acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law[,] a state employee or officer whose purely private acts were not furthered by any actual or purported state authority will not be found to have acted under color of state law.")

10

(citation modified).

Plaintiffs' efforts to categorize its allegations as a "pattern of official misconduct [that] distinguishes this case from those involving purely private political activity" is unavailing. (Opp'n at 15). As Defendants correctly note, courts across the country have found public officials who are engaging in political campaigning are acting in their private capacity and have declined to find their conduct actionable under Section 1983. *See Reardon v. Danley*, 74 F.4th 825, 828 (7th Cir. 2023) (finding a public official did not act under color of state law where there were no allegations that the removal of campaign signs from a resident's lawn prior to the election "was related to his position as a Coles County Board member, or that he possessed any State authority to remove it" (citing *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021))); *Campbell v. Reisch*, 986 F.3d 822, 823, 826 (8th Cir. 2021) (finding a Missouri state senator did not act under color of state law by blocking a constituent from a Twitter page that she created to announce her candidacy for office because the Twitter account was created as a campaign tool prior to being elected and she continued to use it "overwhelmingly for campaign purposes" after her election); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 631-32 (E.D. Pa. 2018) (finding the Democratic Committee was acting as a private organization and not under color of state law where leaders were distributing literature and entering polling locations); *Krupa v. Quinn*, 596 F. Supp. 3d 1127, 1138 (N.D. Ill. 2022) ("[C]ampaigning for reelection is private activity, unrelated to an official's state-sanctioned duties.") (collecting cases); *cf. Callaway*, 576 F. Supp. 3d at 244 n.7 ("An individual need not be an elected official to campaign for election, and the Court's research did not identify any official duty that requires elected officials to campaign for reelection.").

As such, Stack's distributions of political handbills at the Property constitutes a private action, not a "state action" per Section 1983. *See Waters v. City of Morristown, TN*, 242 F.3d 353,

11

359 (6th Cir. 2001) ("[A] defendant's private conduct, outside the course or scope of his duties

and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under

color of state law.") (collecting cases). Because merely private conduct is not actionable under

Section 1983, Count I must be dismissed.

     Further, because the Court has already determined that Plaintiffs have not sufficiently

stated a claim under the federal Constitution, and because courts interpret the New Jersey

Constitution analogously to the federal Constitution, *see Trafton*, 799 F. Supp. 2d at 443-44, the

Count V similarly fails. Because Plaintiffs do not sufficiently allege any action under "color of

law," there is no need to determine whether a federal right has been violated. *Rendell-Baker*,

457 U.S. at 838.

     Accordingly, the Court will dismiss Count I and V for failure to plead Stack acted under

color of state law.

### B. Plaintiffs Fail to Plead Viable Claims Based Upon the Unauthorized Search and Issuance of Health Code Violations (Counts II, III, IV, and VI).

     Through Counts II, III, IV and VI, Plaintiffs allege that Defendants conducted an

unreasonable search by entering the Property's boiler room in violation of the Fourth Amendment

and Article IV of the New Jersey State Constitution and the issuance of "multiple continuing health

department violations against Plaintiff without proper justification." (*See* Am. Compl. ¶¶ 53-79,

88-93).

     Defendants argue Counts II and VI should be dismissed because Plaintiffs fail to account

for the exigent circumstances that necessitated entry into the boiler room. (Br. at 24-26). In

opposition, Plaintiffs contend the emergency aid doctrine does not apply to the allegations set forth

in the Amended Complaint. (*See* Opp'n at 15-17). As Counts II, III, IV, and VI are all premised

on Defendants' search of the Property, the Court addresses the Counts together for purposes of

this Opinion. As Plaintiffs fail to allege a constitutional violation, the Court dismisses Counts II, III, IV and VI.

"'The emergency aid doctrine is derived from the commonsense understanding that *exigent circumstances* may require public safety officials, such as the police, firefighters, or paramedics, to enter a dwelling without a warrant for the purpose of protecting or preserving life, or preventing serious injury.'" *State v. Hathaway*, 120 A.3d 155, 164 (N.J. 2015) (quoting *State v. Frankel*, 847 A.2d 561, 568 (N.J. 2004)); *see Kentucky v. King*, 563 U.S. 452, 460 (2011) ("Under the 'emergency aid' exception, . . . 'officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006))). The emergency aid doctrine "does not depend on an officer's subjective intent or the seriousness of any crime they are investigating when the emergency arises." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (citing *Mincey v. Arizona*, 437 U.S. 385, 404-05 (1978)).

Under the emergency aid doctrine, the plaintiff must show "'(1) the officer had an objectively reasonable basis to believe that an emergency require[d] that he [or she] provide immediate assistance to protect or preserve life, or to prevent serious injury and (2) there was a reasonable nexus between the emergency and the area or places to be searched.'" *Hathaway*, 120 A.3d at 164 (first alteration in original) (quoting *State v. Edmonds*, 47 A.37 737, 745 (N.J. 2012)).

In the Amended Complaint, Count II is raised pursuant to the First Amendment and Section 1983, Count III is raised pursuant to the Fourth Amendment and Section 1983, Count IV is raised pursuant to the Fourteenth Amendment and Section 1983, and Count VI is raised pursuant to the New Jersey State Constitution and the NJCRA. (*See* Am. Compl. ¶¶ 53-79, 88-93). As stated *supra*, in order to state a claim under Section 1983, "a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States[.]" *West*, 487 U.S. at 48 (citation modified). Additionally, NJCRA claims are analyzed under the same legal framework applicable to those brought pursuant to Section 1983. *See Trafton*, 799 F. Supp. 2d at 443-44.

Before the Court addresses whether the emergency aid doctrine applies, the Court must consider whether Plaintiffs have alleged a constitutional violation based on the alleged unreasonable search. The Court finds Plaintiffs have failed to set forth sufficient factual allegations for the Court to decipher whether Defendants unreasonably searched the Property.

According to the Amended Complaint, "the outside temperature in Union City [on October 31, 2023] was recorded as over 52 degrees." (Am. Compl. ¶ 30). Around 9:00 AM, Plaintiffs received notice "by a Union City Health Inspector that one of the apartments in the Property was experiencing a lack of heat." (*Id.* at ¶ 29). Plaintiffs allege an agent who responded to the Property on their behalf found the boiler to be in "good working order." (*Id.* at ¶ 31). Under Union City Municipal Code § 329-9, if a boiler is found to be malfunctioning, the property owner has 24 hours from receiving notice to make repairs. (*Id.* at ¶ 32). Section 32-10 only authorizes the Health Inspector to arrange repairs after this 24-hour period has passed and requires that the tenant must have made a bona fide attempt to inform the landlord before lodging a complaint. (*Id.* at ¶ 33). Nevertheless, at approximately 6:00 p.m., Plaintiffs allege that UCPD officers "entered the Property and broke into four boiler rooms without authorization." (*Id.* at ¶ 34).

The Court notes that whether the boiler was in "good working order" alone does not establish a lack of authorization for the entry. Plaintiffs' allegations do not address or challenge, however, whether the Union City Health Inspector received a no heat complaint or whether in fact an apartment was without heat. Without such allegations, Plaintiffs' assertion that entry into the Property was without authorization lacks sufficient factual basis "to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Similarly, Plaintiffs' allegations about the issuance of "multiple continuing health department violations against Plaintiff without proper justification," (*see, e.g.*, Am. Compl. ¶¶ 59, 75), are without factual content that would allow the Court to draw any inference whether Defendants engaged in such conduct or whether such conduct was in fact improper. Moreover, Plaintiffs' allegation that "the UCPD was seen taking pictures of the Property and physically checking doors to see if they were locked – all without authorization," (*see id.* at ¶ 69), lacks factual support to infer why such actions constitute culpable conduct.

Therefore, the Court finds Counts II, III, IV and VI fail to plead cognizable claims of constitutional violations. As such, the Court will not consider whether the emergency aid doctrine applies at this juncture. Accordingly, the Court dismisses Counts II, III, IV and VI without prejudice.[7]

### C. Plaintiffs Have No Legal Basis to Claim an Implied Private Right of Action Under the Union City Municipal Code (Counts VII and VIII).

Finally, Defendants contend Plaintiffs' Union City Municipal Code claims must be dismissed because neither of the sections relied upon in the Municipal Code provide them with a private right of action to raise these claims. (Br. at 30-33). In opposition, Plaintiffs argue "the

---

[7] "[A] municipality can only be liable under Section 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom." *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). To state a claim for municipal liability, plaintiffs must allege "(1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom" or deliberate indifference to the constitutional rights of others. *Id.* (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Taylor v. Pa.*, No. 17-3369, 2018 WL 6574187, at *7 (E.D. Pa. Dec. 12, 2018) (citation modified); *Callaway*, 576 F. Supp. 3d at 248. Because Plaintiffs fail to adequately allege the first prong, the Court need not engage in further analysis under *Monell*. *See Rendell-Baker*, 457 U.S. at 838.

Similarly, to determine whether a state official is entitled to qualified immunity, "courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because Plaintiffs fail to sufficiently allege the "constitutional violation" prong, the Court does not engage in further analysis of qualified immunity.)

Amended Complaint creates a plausible basis for finding an implied private right of action."

(Opp'n at 17-19). The Court agrees with Defendants and dismisses Counts VII and VIII.

Generally, New Jersey courts "'have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action.'" *Medical Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 868 A.2d 1162, 1168 (N.J. Super Ct. App. Div. 2005) (quoting *R.J. Gaydos, Ins. Agency, Inc. v. Nat'l Cons. Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001)). "Compounding that reluctance here, federal courts will generally avoid expanding state-law liability in ways not foreshadowed by state-court precedent." *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 354 (D.N.J. 2021) (citing *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002)). "It follows that federal courts 'should be even less inclined' than state courts to imply private rights of action from state statutes and regulations." *Id.* at 354-55 (quoting *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 571-72 (D.N.J. 2008)).

To decide whether to imply a private right of action from a statute, New Jersey courts use a three-part test adopted from *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015). Courts may assess whether an implied private right of action exists by considering:

> (1) whether [the] plaintiff is a member of the class for whose special benefit the statute was enacted; (2) if there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) whether recognition of an implied right of action would be consistent with the purposes of the legislation.

*Warren Cnty. Bar Ass'n v. Bd. of Chosen Freeholders*, 899 A.2d 1028, 1031 (N.J. Super. Ct. App. Div. 2006) (citing *R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1142), *certif. denied*, 907 A.2d 1014 (N.J. 2006).[8] "New Jersey courts apply this test against a general background reluctance to imply

---

[8] The test has similarly been enunciated as whether

a private right of action." *MHA*, 539 F. Supp. 3d at 354 (citing *Gaydos*, 773 A.2d at 1142).

With respect the first factor of the test, Chapter 1, Article III, Section 18 of the Union City Municipal Code provides that "[w]here a violation of this Code is found to exist, a written notice *from the enforcing official* shall be served on the person or persons responsible for the correction thereof." (Declaration of Mauro G. Tucci ("Tucci Decl."), ECF No. 23-2, Ex. A at 4) (emphasis added).[9] This provision shows that the default for enforcement is by an "enforcing official", i.e., a public official, as opposed to a private citizen. Plaintiffs fail to point the Court to any provisions to support concluding otherwise. As such, the first factor weighs against providing a private right of action under Chapter 208 or 329.

As to the second factor, there is no evidence to suggest that Union City intended to afford citizens with a private right of action under Chapters 208 and 329. (*See* Tucci Decl., Ex. B). Upon review of the Union City Municipal Code, it is evident that Union City has expressly provided for a private right of action in specific chapters and sections but omitted such right in others. (*Compare id.* (no express private right of action), *with* Tucci Decl., Ex. C (providing that private citizens may enforce Union City's ordinances regarding political contributions)). For instance, the language of Chapter 22, Section 9 of the Union City Municipal Code provides, in relevant part, that

> every person aggrieved by a violation of the chapter, or any taxpayer or resident of the City of Union City has the right, consistent with the Rules of Court, to file charges in a court of competent jurisdiction and/or to pursue a civil action for a violation of this chapter in a court of competent jurisdiction, and to seek and obtain

---

(1) the plaintiff is "one of the class for whose especial benefit the statute [or regulation] was enacted," (2) "there is any evidence that the Legislature [or agency with delegated authority] intended to create a private cause of action," and (3) "implication of a private cause of action in this case would be consistent with the underlying purposes of the legislative scheme."

*MHA*, 539 F. Supp. 3d 349, 354 (D.N.J. 2021) (quoting *Jarrell*, 123 A.3d at 1029).

[9] In considering a motion to dismiss, the reviewing court examines the "complaint, exhibits attached to the complaint, [and] matters of public record," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)), we can also consider documents "that a defendant attaches as an exhibit to a motion to dismiss," *Pension Benefit Guar. Corp.*, 998 F.2d at 1196, if they are "undisputedly authentic" and "the [plaintiff's] claims are based [on them]," *Mayer*, 605 F.3d at 230 (citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1196).

declaratory, injunctive, or other legal or equitable relief, including but not limited
to attorneys' fees and costs, arising from or related to a violation of this chapter.

(Tucci Decl., Ex. C at 30)

The Court finds the omission of any private right of action in Chapters 208 and 329, but

inclusion in Chapter 22, indicates Union City did not intend to provide citizens with a private right of

action with respect to Chapters 208 and 329. *See Fuster v. Twp. of Chatham*, 328 A.3d 894, 902 (N.J.

2025) ("'There is no more persuasive evidence of legislative intent than the words by which the

Legislature undertook to express its purpose . . . .'" (quoting *Perez*, 94 A.3d at 873); *DiProspero v.*

*Penn*, 874 A.2d 1039, (N.J. 2005) ("We ascribe to the statutory words their ordinary meaning and

significant and *read them in context with related provisions so as to give sense to the legislation as a*

*whole*.") (citation modified) (emphasis added). Accordingly, the Court finds the second factor also

weighs against finding a private right of action under Chapter 208 or 329.

Finally, in considering the third factor, the Court does not believe providing a private right of

action for either Chapter 208 or 329 would not be consistent with the legislative scheme of Union

City's municipal ordinances. "The general rule is that the enforcement of ordinances is a

governmental function and, in the absence of a statute imposing a liability, a municipality is not

liable for failure to enforce ordinances which have been enacted." *Lanni v. City of Bayonne*, 72

A.2d 397, 398 (N.J. Super. Ct. App. Div. 1950) (citation modified). As discussed *supra*, this is

evident in Chapter 1, Article III, Section 18 of the Union City Municipal Code whereby it provides

that "[w]here a violation of this Code is found to exist, a written notice *from the enforcing official*

shall be served on the person or persons responsible for the correction thereof." (Tucci Decl., Ex.

A, ECF No. 23-2 at 4) (emphasis added). Accordingly, the Court finds the third factor weights

against finding a private right of action under Chapter 208 or 329.

Therefore, as all three factors weigh against Plaintiffs, the Court declines to find an implied

right of action under Chapters 208 or 329. As such, the Court will dismiss Counts VII and VIII of the Amended Complaint with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 23) is **GRANTED**, and the Amended Complaint (ECF No. 14) is **DISMISSED without prejudice**, except for Counts VII and VIII, **which are DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

DATED: June 30, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge